Miscellaneous Docket No. ___

IN THE
# United States Court of Appeals for the Federal Circuit

IN RE APPLE INC.,

*Petitioner.*

On Petition for Writ of Mandamus to the
United States District Court for the
Western District of Texas
No. 6:21-cv-00620-ADA, Hon. Alan D Albright

## APPLE INC.'S NON-CONFIDENTIAL
## PETITION FOR WRIT OF MANDAMUS

Michael T. Pieja
GOLDMAN ISMAIL TOMASELLI
  BRENNAN & BAUM LLP
200 South Wacker Dr.
22nd Floor
Chicago, IL 60606

Melanie L. Bostwick
Cesar A. Lopez-Morales
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1152 15th Street NW
Washington, DC 20005
(202) 339-8400

Jodie C. Liu
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019

*Counsel for Petitioner*

FORM 9. Certificate of Interest

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | |
| **Short Case Caption** | In re Apple Inc. |
| **Filing Party/Entity** | Apple Inc. |

---

**Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 09/06/2022

Signature: /s/ Melanie L. Bostwick

Name: Melanie L. Bostwick

FORM 9. Certificate of Interest

Form 9 (p. 2)
July 2020

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Apple Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| Kelly Hart & Hallman LLP | J. Stephen Ravel | Kelly Ransom |
| Doug Winnard | Lesley Hamming | Jennie Hartjes |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| In re Apple Inc., No. 22-162 (Fed. Cir.) | Scramoge Technology Ltd. v. Apple Inc., No. 6:21-cv-01071-ADA (W.D. Tex.) | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ...............................................................i

TABLE OF AUTHORITIES.....................................................vi

STATEMENT OF RELATED CASES .....................................ix

INTRODUCTION...................................................................... 1

RELIEF SOUGHT.................................................................... 3

ISSUE PRESENTED ................................................................ 3

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................ 4

XR sues Apple for patent infringement in the Western District of Texas despite having no connection to that district ................................................................................... 4

Apple moves to transfer the suit to the Northern District of California, and venue discovery proceeds ............................. 6

The district court sua sponte orders the parties to complete fact discovery and "renew" their briefing on Apple's transfer motion before it will consider whether to transfer venue ...................................................................... 13

REASONS FOR ISSUING THE WRIT ................................... 15

I.     Apple Has A Clear And Indisputable Right To The Writ................................................................................. 16

   A.     The district court clearly abused its discretion by violating binding precedent requiring courts to prioritize transfer motions. ......................................... 16

   B.     The district court's stated reasons for its extraordinary order cannot justify its departure from precedent. ........................................................ 22

II.    Apple Has No Other Adequate Means To Obtain Relief...... 28

III.   Mandamus Is Appropriate Here Because Apple Has A Strong Case For Transfer And The Equities Heavily Favor Apple. ...................................................................... 30

A.    The clearly superior convenience of the Northern
       District of California makes the court-mandated
       delay especially unjustified..........................................30

       1.    The private-interest factors strongly favor
             transfer..............................................................31

       2.    The public-interest factors also favor transfer...36

B.    The equities heavily favor Apple. ...............................38

CONCLUSION .......................................................................41

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

**CONFIDENTIAL MATERIAL OMITTED**

The material redacted from pages 5, 32, and 33 of this petition

identifies a third-party.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acer Am. Corp.*,
   626 F.3d 1252 (Fed. Cir. 2011) .......................................................... 33

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020) .................17, 18, 19, 20, 28, 29, 37, 39

*In re Apple Inc.*,
   No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) ......... 33, 34

*In re Apple, Inc.*,
   581 F. App'x 886 (Fed. Cir. 2014) ...................................................... 33

*Cheney v. U.S. Dist. Ct.*,
   542 U.S. 367 (2004) .................................................................... 15, 30

*Cont'l Grain Co. v. The Barge FBL-585*,
   364 U.S. 19 (1960) ............................................................................ 16

*In re DISH Network L.L.C.*,
   No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021) ............... 35

*In re EMC Corp.*,
   501 F. App'x 973 (Fed. Cir. 2013) .......................................... 16, 17, 20

*In re Fusion-IO, Inc.*,
   489 F. App'x 465 (Fed. Cir. 2012) ...................................................... 20

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) .................................................... 32, 34

*In re Google Inc.*,
   No. 2015-138, 2015 WL 5294800 (Fed. Cir. July
   16, 2015).................................................18, 19, 20, 21, 23, 28, 29, 38

*In re Horseshoe Ent.*,
   337 F.3d 429 (5th Cir. 2003) ...................................................... 17, 21

*In re Hulu, LLC*,
  No. 2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ................. 34

*In re Juniper Networks, Inc.*,
  14 F.4th 1313 (Fed. Cir. 2021) .................................... 24, 32, 34, 37, 38

*Koss Corp. v. Apple Inc.*,
  No. 6-20-cv-00665-ADA, 2021 WL 5316453 (W.D. Tex.
  Apr. 22, 2021) ...................................................................................... 8

*LoganTree LP v. Apple Inc.*,
  No. 6:21-cv-00397-ADA, 2022 WL 1491097 (W.D. Tex.
  May 11, 2022) ....................................................................................... 8

*McDonnell Douglas Corp. v. Polin*,
  429 F.2d 30 (3d Cir. 1970) ............................................... 17, 20, 24, 39

*In re Netflix, Inc.*,
  No. 2021-190, 2021 WL 4944826 (Fed. Cir. Oct. 25, 2021) ............... 18

*In re Nintendo Co.*,
  544 F. App'x 934 (Fed. Cir. 2013) ................................................ 17, 20

*In re Nintendo Co.*,
  589 F.3d 1194 (Fed. Cir. 2009) ........................................................... 31

*In re Samsung Elecs. Co.*,
  2 F.4th 1371 (Fed. Cir. 2021) ....................................................... 34, 38

*In re SK hynix Inc.*,
  835 F. App'x 600 (Fed. Cir. 2021) .............................. 18, 19, 21, 29, 30

*In re TracFone Wireless, Inc.*,
  848 F. App'x 899 (Fed. Cir. 2021) ......................................... 18, 21, 30

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964) ...................................................................... 28, 38

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ................................. 15, 30, 31, 36, 38, 40

*In re Wyeth*,
 406 F. App'x 475 (Fed. Cir. 2010) ...................................................... 17

**Statutes**

28 U.S.C. § 1404(a) ..........................................1, 17, 18, 19, 28, 30, 36, 38

**Rules and Regulations**

Fed. R. Civ. P. 30(b)(6) ............................................................................ 6, 9

Fed. R. Civ. P. 45(c)(1)(A) ........................................................................ 33

**Other Authorities**

Apple's Response to Petition for Rehearing En Banc, *In re
 Apple Inc.*, No. 20-135, Dkt. 70 (Fed. Cir. Dec. 29, 2020) ................. 27

Complaint, *XR Commc'ns, LLC v. Cisco Sys.*, No. 6:21-cv-
 00623, Dkt. 1 ...................................................................................... 35

Discovery and Scheduling Order, *Aire v. Apple, Inc.*, No.
 6:21-cv-01101-ADA, Dkt. 68 (W.D. Tex. Aug. 22, 2022) ................... 15

Discovery and Scheduling Order, *Scramoge Tech. Ltd. v. Apple
 Inc.*, 6:21-cv-01071-ADA, Dkt. 56 (W.D. Tex. Aug. 26, 2022) ........... 15

Discovery and Scheduling Order, *XR Commc'ns v. Asustek
 Comput. Inc.*, No. 6:21-cv-00622-ADA, Dkt. 55 (W.D. Tex.
 Aug. 25, 2022) ..................................................................................... 15

Joint Stipulation of Dismissal, *Koss Corp. v. Apple Inc.*, No.
 6:20-cv-00665-ADA, Dkt. 303(W.D. Tex. July 23, 2022)................... 25

Order of Dismissal, *Koss Corp. v. Apple Inc.*, No. 6:20-cv-
 00665-ADA, Dkt. 304 (W.D. Tex. July 23, 2022)............................... 25

Order Granting Motion To Transfer, *Cub Club Inv., LLC v. Apple
 Inc.*, No. 6:20-cv-00856-ADA, Dkt. 28 (W.D. Tex. Sept. 7, 2021)......... 8

Order Granting Motion to Transfer, *XR Comm'cns, LLC v. HP
 Inc.*, No. 6:21-cv-694-ADA, Dkt. 53 (W.D. Tex. Aug. 1, 2022) ........... 36

## STATEMENT OF RELATED CASES

No other appeal in or from the same proceeding in the Waco Division of the Western District of Texas was previously before this or any other appellate court.

Apple is aware of two cases that may directly affect or be directly affected by the Court's resolution of this mandamus petition. Those cases involve similar facts as this one, and the district court entered substantively identical orders to the one at issue in this petition. Apple previously filed a petition for a writ of mandamus in one of those cases; that petition is pending before this Court as *In re Apple Inc.*, No. 22-162 (Fed. Cir.). The second case is pending in the district court as *Scramoge Technology Ltd. v. Apple Inc.*, No. 6:21-cv-01071-ADA (W.D. Tex.).

# INTRODUCTION

This Court has held that motions to transfer venue under 28 U.S.C. § 1404(a) must be decided promptly, at the outset of litigation, before the case has progressed substantially on the merits. Indeed, the purpose of § 1404(a) transfer is to ensure that litigation takes place in a convenient forum with some meaningful connection to the dispute. Delaying a transfer ruling beyond decisions that affect the substantive issues in the litigation undermines § 1404(a)'s purpose by forcing litigants and a district court to spend time and resources proceeding in a forum that may not ultimately try the case. Thus, this Court has granted mandamus relief to order district courts to decide transfer motions that have lingered on the docket while the cases advance to substantive stages like discovery, claim construction, and other merits matters.

Here, without ruling on Apple's fully briefed transfer motion, the district court affirmatively ordered the parties to complete fact discovery, begin expert discovery, and otherwise press forward on the merits, after which they must "renew" briefing on the transfer issue. Only then will the district court take up transfer. By that time—fifteen

months after Apple first filed its transfer motion—the parties will not only have completed fact discovery (with the district court resolving all discovery disputes), they will also have served final patent infringement and invalidity contentions, narrowed the asserted claims and list of prior art, and even served all expert reports—all in an inconvenient forum that should not try this case.

The district court entered a similar scheduling order in another case, in which Apple has already sought this Court's mandamus review. *See In re Apple Inc.*, No. 22-162 (Fed. Cir. Sept. 1, 2022). Here, as in that case, mandamus relief is warranted. The district court's substantial change in the schedule, and its violation of precedent, are not warranted by Apple's modest supplements to the venue record: Apple sought only to confirm the veracity of information it had previously provided and to bring to the district court's attention inaccurate information that plaintiff XR Communications had included in its own transfer filings. Furthermore, the district court's view that "[f]ull fact discovery will allow the parties to provide the Court with the best evidence for ruling on a motion to transfer" is at odds with precedent. Appx1-2. And the district court's frustration with "transfer-

2

driven speculation about the witnesses and evidence," Appx2, can be addressed by crediting sworn testimony—which has proven to be reliable—over untested speculation—which has not.

Mandamus is urgently needed to address the district court's contravention of this Court's directives in its scheduling order, which has now been entered in at least four cases. The Court should grant mandamus to ensure that transfer motions receive the priority they deserve.

## RELIEF SOUGHT

Apple respectfully requests that the Court issue a writ of mandamus directing the district court to vacate its scheduling order, promptly rule on Apple's pending transfer motion, and stay all district-court proceedings on the merits until transfer has been resolved.

## ISSUE PRESENTED

Whether Apple is entitled to a writ of mandamus to correct the district court's clear abuse of discretion in requiring the parties to complete full fact discovery and otherwise move the litigation forward on the merits for at least another six months before the district court

will consider whether to grant a venue-transfer motion that Apple filed in December 2021.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### *XR sues Apple for patent infringement in the Western District of Texas despite having no connection to that district*

XR is a California company with no known ties to Texas. Appx16; Appx37. Apple likewise is a California company, with headquarters in the Northern District of California—specifically, Cupertino, California. Appx54.

In 2021, XR sued Apple in the Waco Division of the Western District of Texas. *See* Appx12-31. XR alleged that many of Apple's WiFi-compatible products infringed XR's patent by supporting the "beamforming" of WiFi transmissions—a process by which WiFi transmissions target particular devices rather than spread out in all directions. Appx15; Appx21-22. Any alleged "beamforming" would be performed, if at all, by WiFi chips that are designed, developed, and supplied by a third party and subsequently integrated into Apple's products. Appx56-57.

XR's suit has no meaningful connection to Texas, much less the Waco Division of the Western District of Texas. It does, however, have

CONFIDENTIAL MATERIAL OMITTED

significant ties to California. Both parties are headquartered there. XR acquired the relevant patent family from Vivato, then a California company. Appx61; Appx70. And when XR prosecuted the patent at issue, it used lawyers in California to do so. Appx72-92.

Meanwhile, XR's patent infringement allegations center on the functionalities of WiFi chips designed, developed, and supplied by third-party <span>Third-party</span> ██████ which is headquartered in California. Appx56-57. None of the <span>Third-party</span> ██████ engineers whom Apple worked with to integrate <span>Third-party</span> ██████ WiFi chips into Apple's products are in Texas; indeed, most are in California. Appx56-57; Appx139. And all interactions between <span>Third-party</span> ██████ and Apple regarding <span>Third-party</span> ██████ WiFi chips took place in the Northern District of California. Appx56-57.

Apple's research, design, development, marketing, and finance operations for the accused technology all take place in the Northern District of California, where Apple is headquartered. Appx53-56. All of Apple's engineers with knowledge of the accused "beamforming" functionality associated with <span>Third-party</span> ██████ WiFi chips are in California. Appx56-57. Apple's likely trial witnesses are in California, including

relevant Apple engineers and Apple employees involved in marketing and licensing the accused products.  Appx56-58.

### *Apple moves to transfer the suit to the Northern District of California, and venue discovery proceeds*

Because this case lacks any connection to the Western District of Texas, in December 2021, Apple filed a motion to transfer the case to the Northern District of California.  *See* Appx32-52.  Venue discovery started shortly thereafter.  *See* Appx146.

In support of its transfer motion, Apple relied on the declaration of Mark Rollins, a finance manager at Apple, to establish certain facts, such as the relevance, role, and locations of witnesses and their teams, as well as the relevance and locations of various categories of documents.  Appx38-41; Appx43; Appx48.  As is typical and appropriate, both in venue disputes and in litigation more broadly, Mr. Rollins provided this declaration as Apple's corporate representative—akin to a Rule 30(b)(6) deponent.  Appx54-59.  Mr. Rollins is well-suited to serve as a corporate witness because, as a finance manager, he has knowledge of sales and financial information concerning a broad array of Apple products that plaintiffs might accuse of infringement.  Appx54.  He provides this type of information based on his personal knowledge.

6

Appx54.  For information that Mr. Rollins does not know personally,

such as the identity and location of engineering or other team members

responsible for the accused technology, he provides that information

under oath based on his review of corporate records and discussions

with Apple employees.  Appx54.

Six months after Apple filed its transfer motion in this case, the

same district court granted Apple's motion to transfer in an unrelated

case:  *Scramoge Technology Ltd. v. Apple Inc.*, No. 6:21-cv-00579-ADA

(W.D. Tex. May 25, 2022).  Appx320-344.  In doing so, the district court

sua sponte ruled on the "credibility" of Mr. Rollins, who had provided a

corporate declaration in the *Scramoge* case that was comparable to his

declaration in this case.  Appx322-328.

As Apple demonstrated in later *Scramoge* filings, the district

court's ruling identified no misstatements or other credibility

deficiencies in Mr. Rollins's testimony.  *See* Appx345-354 (Apple's

motion to seal portions of the *Scramoge* transfer order); Appx356-373

(Apple's motion to vacate portions of the *Scramoge* transfer order).

Instead, the district court faulted Mr. Rollins for doing exactly what

corporate witnesses are obligated to do:  gathering information from

other individuals within Apple and relaying that information on behalf of the company.  *See generally* Appx320-344.  Indeed, the district court's ruling retroactively criticized statements Mr. Rollins had made in other cases, even though the district court itself (and sometimes this Court) had specifically credited those statements in ruling for Apple.  *See* Appx327; *infra* n.1.  The district court nonetheless stated that it was providing this "history" of "the offenses in Mr. Rollins's sealed declarations so that other courts and administrative agencies can similarly discount his credibility" in the future.  Appx328 n.3.

Until the recent order in the *Scramoge* matter, Apple had no reason to know that the district court would take issue with this manner of presenting corporate information in support of a transfer motion.  Indeed, the district court had previously cited Mr. Rollins's declarations favorably in other cases.[1]  And Apple does not believe that

---

[1] *E.g.*, *LoganTree LP v. Apple Inc.*, No. 6:21-cv-00397-ADA, 2022 WL 1491097, at *3, *6-7 (W.D. Tex. May 11, 2022) ("accord[ing] weight to the Rollins Declaration's representation" regarding the location of the "source code and technical documents," and rejecting the plaintiff's criticisms of that declaration); Order Granting Motion To Transfer, *Cub Club Inv., LLC v. Apple Inc.*, No. 6:20-cv-00856-ADA, Dkt. 28 at 6-9 (W.D. Tex. Sept. 7, 2021) (crediting evidence provided by Mr. Rollins under compulsory-process and witness-convenience factors); *Koss Corp.*

the *Scramoge* order identified any actual problem with Apple's practice of providing venue evidence through a corporate witness, let alone any basis for questioning Mr. Rollins's "credibility." Indeed, XR had conducted a Rule 30(b)(6) deposition of Mr. Rollins in this case without complaint. *See* Appx119. But now that the district court has expressed its preference for venue declarants to cover only matters within their personal knowledge, Apple has endeavored to comply.

After receiving the *Scramoge* order, Apple acted promptly in this case to obtain declarations from each of the Apple employees Mr. Rollins had consulted in preparing his corporate declaration. Appx172. Each of these declarations confirmed, based on the declarant's personal knowledge, that everything in Mr. Rollins's original declaration was accurate.

For example, Mr. Rollins's declaration stated that he had spoken with Mr. Tushar Shah, who leads a team in Apple's Wireless Platform Architecture group that is responsible for monitoring the integration of

---

*v. Apple Inc.*, No. 6-20-cv-00665-ADA, 2021 WL 5316453, at *3 (W.D. Tex. Apr. 22, 2021) ("agree[ing] with Apple," based in part on Mr. Rollins's declaration, that the "access to sources of proof" factor favored transfer).

WiFi chips into the accused Apple products. Appx56. Mr. Rollins explained the responsibilities of Mr. Shah and his team and the location of relevant team members—including the fact that none were in Texas. Appx56-57. In the declaration Apple obtained from Mr. Shah directly, Mr. Shah confirmed that he had spoken to Mr. Rollins before the original declaration was filed; stated that he had reviewed the relevant portions of Mr. Rollins's declaration and confirmed the facts were "true and correct"; and also restated all of the facts originally provided by Mr. Rollins, testifying to them based on his personal knowledge. Appx179-181.

Each of the other new declarations provided the same confirmation. And each came from an individual named in Mr. Rollins's original declaration. Appx171.

In July 2022, Apple requested leave to supplement its transfer motion to include declarations from the Apple employees identified in Mr. Rollins's declaration. Appx169-175. Apple explained that, in light of the criticisms in the *Scramoge* order, the district court would benefit from hearing directly from the Apple employees identified in Mr. Rollins's declaration. Appx172-173. Apple further explained that XR

would not be prejudiced because (i) Apple had already identified all of those employees in its transfer motion and Mr. Rollins's declaration; (ii) the employees' declarations were substantively identical to the information that Mr. Rollins had already provided in his declaration; and (iii) Apple had provided the names of these employees to XR in its original transfer motion, which gave XR ample time to depose any of these employees before its response to the transfer motion was due. Appx173-174.  XR had elected not to do so, although it had deposed Mr. Rollins in his capacity as Apple's corporate designee.  Appx103; Appx119.  Nevertheless, Apple offered to accommodate reopening venue discovery to allow XR to depose these individual witnesses.  Appx174-175.

XR ultimately did not ask for or take depositions of those witnesses and instead opposed any supplementation of the record as to venue issues.  *See* Appx160-167; Appx191-202.  XR argued, among other things, that Apple should have anticipated the district court's objections to Mr. Rollins's declarations and offered the supplemental declarations earlier, and that XR would be prejudiced by admission of "new evidence" in the supplemental declarations and further "delay [of] the

11

entire case." Appx198-202. Despite that characterization of the declarations as "new evidence," XR elsewhere acknowledged that they provided only "duplicative" information to the existing record. Appx200-201.

In a separate motion, Apple also requested leave to file supplemental evidence and a supplemental reply brief regarding XR's misrepresentations in its transfer opposition. XR had represented to the district court that two inventors of the asserted patents were "willing to travel" to the Western District of Texas despite being located elsewhere. Appx107; Appx119. But after briefing on the transfer motion concluded, Apple discovered that one of the California inventors stated that he had *not* agreed to travel to Texas. Appx161. Further investigation yielded deposition testimony and other statements from the two inventors making clear that XR had not confirmed that they were willing to travel to the Western District of Texas for trial before telling the district court that this was the case. Appx162-164. Apple thus sought to supplement the record with, and file a supplemental brief explaining, that newfound evidence.

***The district court sua sponte orders the parties to complete fact
discovery and "renew" their briefing on Apple's transfer motion
before it will consider whether to transfer venue***

On August 25, 2022, the district court granted Apple's motions to
supplement its transfer motion over XR's opposition. Appx1-3. In doing
so, however, the district court also postponed ruling on Apple's fully
briefed transfer motion until after the completion of fact discovery. *See*
Appx2. The district court stated that "[f]ull fact discovery will allow the
parties to provide the Court with the best evidence for ruling on a
motion to transfer." Appx1. Although neither party had asked for a
revised schedule, the district court sua sponte issued a new discovery
and scheduling order, which requires the parties to "renew their …
briefing on the motion to transfer before the Court resolves the transfer
motion" *after* the parties conduct fact discovery and determine which
witnesses and evidence they intend to present at trial. Appx2.

The order provides for six weeks of additional briefing on the
transfer motion after the currently scheduled close of fact discovery in
late January 2023. Appx2; Appx97. In other words, the district court
ordered the parties to continue engaging in more than *six additional
months* of fact discovery and file additional transfer briefing before it

will even consider whether to transfer venue.  Meanwhile, Apple's transfer motion will have been fully briefed for several months, and the parties will have been required to take other substantive steps in the case, including claim-construction briefing, final infringement contentions, and final invalidity contentions, all pursuant to this district court's local rules and procedures (not the ones of the likely transferee forum).

Moreover, although the order states that the district court "finds it prudent to have the parties to [sic] renew … briefing on the motion to transfer," Appx2, it does not allow Apple to file a new motion to transfer accounting for any additional information gleaned in months of fact discovery.  Instead, the district court allows XR to file a new opposition with new information gleaned from fact discovery.  Although the district court allows Apple to file a new reply, it also now permits XR to file a sur-reply.  Appx2.

While unusual, the discovery and scheduling order in this case is not a one-off.  Indeed, in the span of a week, the district court entered nearly identical orders in at least three other patent-infringement cases (two against Apple) with pending motions to transfer venue.  *See, e.g.*,

*Scramoge Tech. Ltd. v. Apple Inc.*, 6:21-cv-01071-ADA, Dkt. 56 (W.D.

Tex. Aug. 26, 2022); *XR Comm'ns v. Asustek Comput. Inc.*, No. 6:21-cv-

00622-ADA, Dkt. 55 (W.D. Tex. Aug. 25, 2022), Appx374-377; *Aire v.

Apple, Inc.*, No. 6:21-cv-01101-ADA, Dkt. 68 (W.D. Tex. Aug. 22, 2022),

Appx218-224. Each of these orders requires the parties to complete fact

discovery and then file three rounds of additional briefing, again over

the course of many months, before the district court will consider

whether to transfer.

## REASONS FOR ISSUING THE WRIT

A petitioner seeking mandamus relief must (1) show a "clear and

indisputable" right to the writ; (2) have "no other adequate means to

attain the relief [it] desires"; and (3) demonstrate that "the writ is

appropriate under the circumstances." *In re Volkswagen of Am., Inc.*,

545 F.3d 304, 311 (5th Cir. 2008) (en banc) (*Volkswagen II*) (quoting

*Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380-81 (2004)). All three

requirements are met here. First, mandamus is necessary to correct

the district court's clear abuse of discretion in deferring resolution of

Apple's transfer motion until fact discovery is complete and the case has

progressed substantially on the merits. The Fifth Circuit and this

Court have made clear that such delay is improper and warrants

mandamus relief.  Second, there is no other form of relief that would

allow Apple to vindicate its right to seek transfer before the significant

inconvenience of proceeding in the original forum occurs.  Finally, the

unreasonableness of the measure the district court took, and the strong

merits of Apple's transfer motion, make mandamus eminently

appropriate here.

## I.     Apple Has A Clear And Indisputable Right To The Writ.

### A.     The district court clearly abused its discretion by violating binding precedent requiring courts to prioritize transfer motions.

A request for transfer is a threshold matter that a district court

must address at the outset of litigation.  The transfer statute is

designed "to protect litigants, witnesses and the public against

unnecessary inconvenience and expense."  *Cont'l Grain Co. v. The Barge*

*FBL-585*, 364 U.S. 19, 27 (1960).  But that goal is "thwarted" when

defendants must participate in protracted litigation before transfer is

resolved.  *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013).

Indeed, "[t]o undertake a consideration of the merits of the action is to

assume, even temporarily, that there will be no transfer before the

transfer issue is decided." *McDonnell Douglas Corp. v. Polin*, 429 F.2d 30, 30 (3d Cir. 1970). For that reason, this Court has stressed "the importance of addressing motions to transfer at the outset of litigation." *EMC*, 501 F. App'x at 975; *see also In re Apple Inc.*, 979 F.3d 1332, 1338 (Fed. Cir. 2020) (faulting district court for "barrel[ing] ahead on the merits in significant respects," including overseeing discovery disputes and claim construction, before issuing a transfer decision); *In re Nintendo Co.*, 544 F. App'x 934, 941 (Fed. Cir. 2013) ("[A] trial court must first address whether it is a proper and convenient venue before addressing any substantive portion of the case."). Just as defendants must file transfer motions promptly, *see In re Wyeth*, 406 F. App'x 475, 477 (Fed. Cir. 2010), district courts must rule on them promptly, *see Apple*, 979 F.3d at 1337-38.

The Fifth Circuit has likewise decreed that transfer motions must take "top priority" in litigation. *In re Horseshoe Ent.*, 337 F.3d 429, 433 (5th Cir. 2003). When district courts fail to afford that priority to transfer motions, this Court has repeatedly used its mandamus authority to ensure that those courts do not "frustrate 28 U.S.C. § 1404(a)'s intent" by forcing litigants "to expend resources litigating

substantive matters in an inconvenient venue while a motion to transfer lingers unnecessarily on the docket." *In re Google Inc.*, No. 2015-138, 2015 WL 5294800, at *1 (Fed. Cir. July 16, 2015); *see also In re SK hynix Inc.*, 835 F. App'x 600, 600-01 (Fed. Cir. 2021); *In re TracFone Wireless, Inc.*, 848 F. App'x 899, 901 (Fed. Cir. 2021); *cf. In re Netflix, Inc.*, No. 2021-190, 2021 WL 4944826, at *1 (Fed. Cir. Oct. 25, 2021) ("Delays in resolving transfer motions, coupled with ongoing discovery, claim construction, and other proceedings, frustrate the purpose of § 1404(a).") (denying mandamus because magistrate judge had ruled on venue motion after petition was filed).

The district court's scheduling order here is directly contrary to this precedent. While it defers the *Markman* hearing and claim-construction order until "the Court resolves the transfer issue," Appx2, those are only "two of the most important and time-intensive substantive tasks a district court undertakes," *Apple*, 979 F.3d at 1338. They are not the *only* important substantive tasks. The scheduling orders in place guarantee that the district court will undertake many other important substantive steps in this case before determining

whether it is the venue where trial will ultimately take place.  *See* Appx1-3; Appx93-98.

Most notably, the most recent discovery and scheduling order ensures that the district court will oversee all of fact discovery, including resolving any discovery disputes.  But this Court has specifically identified these steps as ones that should await a transfer decision.  *See Apple*, 979 F.3d at 1338 (faulting district court for holding "a discovery hearing and issu[ing] a corresponding discovery order"); *SK hynix*, 835 F. App'x at 600-01 (faulting district court for "order[ing] the parties to engage in extensive discovery"; staying "all discovery" until transfer was resolved); *Google*, 2015 WL 5294800, at *1 (faulting district court for "proceeding through to the close of discovery" and conducting "a hearing related to several discovery disputes").

Moreover, this Court has repeatedly endorsed the Third Circuit's precedent holding that "it is not proper to postpone consideration of the application for transfer under § 1404(a) until discovery on the merits is completed, since it is irrelevant to the determination of the preliminary

question of transfer." *McDonnell Douglas*, 429 F.2d at 30-31.[2]  The

district court's order here does exactly what the Third Circuit deemed

improper.  *Id.* at 31 (vacating order that required all merits discovery to

be completed before district court would resolve transfer motion).

In addition, the order ensures that the parties must complete

multiple other substantive steps in the Western District of Texas before

the district court will even consider whether this case should be

transferred to the Northern District of California.  Claim-construction

briefing will be completed; the deadline to add parties will pass; the

parties will serve final infringement and invalidity contentions under

the local patent rules of the Texas forum; the deadline to amend

pleadings will pass; the parties will narrow the asserted claims and

prior art (again, according to the Texas court's particular rules); and the

district court will resolve any dispute over that narrowing.  *See* Appx1-

3; Appx93-98.  All of this will take place before the parties are even

permitted to resume briefing on Apple's transfer motion.  In short, the

district court's order guarantees that the parties will expend significant

---

[2] *See Apple*, 979 F.3d at 1337; *Google*, 2015 WL 5294800, at *1;
*Nintendo*, 544 F. App'x at 941; *EMC*, 501 F. App'x at 975 n.1; *In re
Fusion-IO, Inc.*, 489 F. App'x 465, 466 (Fed. Cir. 2012).

resources and the case will substantially progress on the merits, all in a forum that ultimately may not preside over the case.[3]

Furthermore, this substantive progress will take significant time. Apple filed its transfer motion in December 2021. Appx32-52. Under the district court's orders, that motion will not be fully briefed until *fifteen months* later, when XR files a sur-reply in March 2023. That is a significantly longer delay than the type this Court has previously found to be unacceptable and to warrant mandamus relief. *See Google*, 2015 WL 5294800, at *1 (delay of 8 months from filing of motion); *TracFone Wireless*, 848 F. App'x at 900 (same); *SK hynix*, 835 F. App'x at 600-01 (same); *cf. Horseshoe Ent.*, 337 F.3d at 433 (Fifth Circuit faulting district court for "wait[ing] some 13 months" to rule on transfer).

A district court is not allowed to perpetuate this kind of delay by letting a transfer motion linger on its docket. *Google*, 2015 WL

---

[3] In combination with the existing scheduling order, the most recent order also places a transfer ruling after the close of *expert* discovery. And it sets the *Markman* hearing for the same day that dispositive motions and *Daubert* motions are due. *See* Appx9 (setting motion deadline for March 31, 2023); Appx2 (setting *Markman* hearing for approximately 10 weeks after close of fact discovery—that is, March 31, 2023).

5294800, at *1.  It certainly cannot be allowed to achieve the same delay by ordering it to occur.

## B. The district court's stated reasons for its extraordinary order cannot justify its departure from precedent.

The district court did not address any of this precedent in issuing its scheduling order.  Nor did it attempt to reconcile its built-in delay with the repeated admonishments of this Court and the Fifth Circuit to resolve transfer motions before proceeding with the merits, including merits discovery.  And the district court's stated reasons for entering this scheduling order do not justify the clear violation of precedent.

**1.**  The district court entered this order in the course of granting Apple's motions to supplement venue discovery.  The district court stated that, "[i]n fairness, if one party supplements its motion, the Court will give the other party the same opportunity."  Appx1.  But giving XR that opportunity would require, at most, a short continuance. Apple's supplemental declarations presented no new information from what was already in XR's possession, and all came from the same individuals XR had already chosen not to depose during the three-month venue discovery period.  Appx173.  Even if XR had expressed a

need to take any other supplemental venue-related discovery, there is no reason why a short continuance would not have sufficed, instead of the extreme option the district court chose. As for Apple's supplement identifying XR's misrepresentations, Apple's reply had made clear there was no need for delay. Appx208.

Furthermore, this Court has rejected the notion that a defendant's motion to supplement the transfer record justifies the kind of extreme delay the district court imposed here. *See Google*, 2015 WL 5294800, at *1 (granting mandamus to correct delay despite "the fact that Google moved to supplement its motion to transfer"). Apple's requested supplements are just as modest as Google's was: Google sought to highlight particular deposition testimony, *id.*, while Apple sought to highlight certain misstatements by XR and to confirm that Apple's corporate witness's representations were consistent with the personal knowledge of individual Apple employees, *supra* 10-12.[4]

---

[4] Like Google, Apple may have decided to withdraw its requested supplement if it had known that significant delay would be the price of a grant.

23

**2.** The district court's second rationale fares no better. The district court opined that, in its experience, "speculation and incomplete[] discovery often plagues early transfer motions." Appx1-2. It asserted that "transfer-driven speculation about the witnesses and evidence fails to align with reality," and that parties end up relying on different witnesses and evidence at trial "from what they identify in their transfer briefs." Appx2. Notably, the district court did not cite any examples of this supposed mismatch. Nor did it attempt to square its position with the authority making clear that, despite the fact that litigation will evolve over time, merits discovery "is irrelevant to the determination of the preliminary question of transfer." *McDonnell Douglas*, 429 F.2d at 30-31; *see also In re Juniper Networks, Inc.*, 14 F.4th 1313, 1319 (Fed. Cir. 2021) (rejecting "the district court's categorical assumption that defendants are likely to call few if any of the proposed party witnesses or prior-art witnesses that are identified for purposes of supporting transfer motions").

Regardless, the real-world evidence tells a different story from what the district court suggested. In fact, the district court had available to it a recent example showing exactly the opposite of what it

described. A patent case involving Apple, in which the district court had previously denied interdistrict transfer, recently settled just days before trial was set to begin. *See Koss Corp. v. Apple Inc.*, No. 6:20-cv-00665-ADA, Dkts. 303, 304 (W.D. Tex. July 23, 2022). At the transfer stage, Apple identified thirteen California-based Apple employees who would be likely trial witnesses, with none in Texas. Appx230-232. Koss, in contrast, argued that two relevant non-party witnesses were in Texas; that two Austin-based Apple employees were also likely witnesses; and that information it found on the Internet contradicted Apple's sworn testimony. Appx273-276. Despite Apple's showing that its Austin-based employees had no relevant information, the district court relied in part on Koss's unsupported speculation in denying transfer. Appx283-311.

The parties' witness lists, filed with the pretrial order shortly before trial was set to begin, bear out Apple's predictions at the transfer stage. Every Apple employee on Apple's "will-call" and "may call" trial lists was a California-based witness identified in Apple's original transfer motion. *Compare* Appx250-262, *with* Appx318 (identifying David Shaw, Aarti Kumar, Ariane Cotte, and Linda Frager as will-call

trial witnesses and Jeffrey Lasker and Baptiste Paquier as may-call trial witnesses).  Plainly, Apple's transfer motion did not "identify witnesses and evidence based on location rather than relevance," as the district court charged here.  Appx2.

But the other side of the story is even more telling.  Koss's trial witness lists did not include either of the Austin-based Apple employees it had featured in opposing transfer.  *Compare* Appx263-281, *with* Appx318.[5]  Nor did it list the Texas-based third-party who had worked on Koss's own accused products, despite relying heavily on him at the transfer stage.  *Compare* Appx273-274, *with* Appx313-314 (Hytham Alihassan identified at transfer but not at trial).[6]  What Koss's lists did include, however, were *ten* of the California-based Apple employees that *Apple* had identified at the transfer stage—despite vigorously opposing the idea that many California-based Apple witnesses would be forced to travel for trial.  *Compare* Appx313-314, *with* Appx263-281.

_____

[5] Koss did indicate its intent to call an Austin-based Apple employee who supports Apple Care functions, but only by playing a portion of his deposition.  Appx313-314.

[6] The other Austin-based non-party witness Koss had cited to oppose transfer was listed as one of 25 "may-call" witnesses—with only 10 hours of trial time available to Koss.  *See* Appx314.

In other words, just as Apple predicted more than a year before trial, a significant number of Apple employees would be required to travel from their homes in Northern California to Waco, Texas, to participate in this trial. And this is not unusual: as Apple has previously explained, its witnesses in patent trials—in any venue— overwhelmingly come from Northern California. *See In re Apple Inc.*, No. 20-135, Dkt. 70, at 20 (Fed. Cir. Dec. 29, 2020) (noting that 87% of the 71 Apple employees who had testified live in patent trials since 2013 came from Northern California, with none coming from Texas ).[7]

In short, to the extent the district court is concerned that parties are engaging in "transfer-driven speculation" that "fails to align with reality," Appx2, experience demonstrates that the most reliable information is provided by a party's sworn testimony and assertions that are tested through the venue-discovery process, not by geography-driven speculation.

---

[7] According to Apple's records, this statistic for patent trials through August 2022 is now approximately 92% from Northern California, and none from Texas.

## II.    Apple Has No Other Adequate Means To Obtain Relief.

Mandamus is the only way for Apple to obtain relief here. Without this Court's intervention, the district court will not consider the transfer motion for more than six additional months while forcing Apple to litigate the merits. No appeal from final judgment could remedy the inconvenience and expense of litigating for almost a year in a venue with no connection to this dispute.

Time and again, this Court has explained that transfer motions "should unquestionably take top priority" in a case. *Apple*, 979 F.3d at 1337; *supra* 17. This Court has also made clear that mandamus relief is appropriate to resolve "a lengthy delay in ruling on a request for [transfer]," which "can amount to a denial of the right to have that request meaningfully considered." *Google*, 2015 WL 5294800, at *1. Such delays "frustrate … § 1404(a)'s intent to 'prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.'" *Id.* (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

In other words, a party whose transfer motion sits on the docket for months gathering dust suffers the same harm—unfixable on

appeal—as a party whose transfer motion is improperly denied.  Both face the hassle and expense of litigating in an inconvenient venue that has little-to-no connection to the dispute.  *Compare id.* at *2 (granting mandamus and ordering district court to decide transfer motion within 30 days while staying all other proceedings), *and SK hynix*, 835 F. App'x at 601 (district court's "refusal to give priority to deciding the transfer issues demonstrates that SK hynix has no alternative means by which to obtain [relief]"), *with Apple*, 979 F.3d at 1337 ("the possibility of an appeal in the transferee forum following a final judgment … is not an adequate alternative" (citation omitted)).

Here, absent this Court's intervention, and despite a fully briefed transfer motion, Apple will spend more than six additional months litigating "[f]ull fact discovery," Appx1-2, in a district court that very likely will not rule on the merits of the case, *see infra* Part III.A.  And even if the district court ultimately grants Apple's motion to transfer this case, Apple cannot recover the time and resources that it will have spent litigating fact discovery and moving forward on the merits in the Western District of Texas.  Fifteen months to decide a motion filed in December 2021 is an "egregious delay" that demonstrates "blatant

disregard for precedent," and Apple "has no alternative means" besides mandamus to avoid that delay. *SK hynix*, 835 F. App'x at 600-01; *see also TracFone Wireless*, 848 F. App'x at 900-01.

## III. Mandamus Is Appropriate Here Because Apple Has A Strong Case For Transfer And The Equities Heavily Favor Apple.

Given the clear merits of Apple's underlying transfer motion and the equities surrounding the district court's sua sponte scheduling order, mandamus is especially "appropriate under the circumstances" here. *See Volkswagen II*, 545 F.3d at 311(quoting *Cheney*, 542 U.S. at 381). The district court's approach fundamentally undermines the purpose of § 1404(a) while giving XR a mulligan after it chose not to seek depositions from Apple. Only a writ of mandamus directing the district court to promptly rule on Apple's pending transfer motion can prevent this harm.

### A. The clearly superior convenience of the Northern District of California makes the court-mandated delay especially unjustified.

As explained above (at 16), the purpose of resolving a § 1404(a) motion is to prevent the parties from having to expend resources litigating in an inconvenient venue—and one that may not ultimately

be the setting for trial.  Here, as Apple's fully briefed transfer motion

demonstrates, this case has no connection to the Western District of

Texas, while the evidence, witnesses, third parties, and local interest

are overwhelmingly concentrated in the Northern District of California.

In short, this case involves the type of "stark contrast in relevance,

convenience, and fairness between the two venues" that compels

transfer.  *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).

Mandamus is therefore warranted to ensure that Apple is not forced to

litigate in a clearly inconvenient forum at least for another six

months—a total of fifteen months since filing—before its transfer

motion is decided.

## 1.    The private-interest factors strongly favor transfer.

The private-interest factors include: (1) "the relative ease of access

to sources of proof"; (2) "the availability of compulsory process to secure

the attendance of witnesses"; (3) "the cost of attendance for willing

witnesses"; and (4) "all other practical problems that make trial of a

case easy, expeditious and inexpensive."  *Volkswagen II*, 545 F.3d at

315.  These factors strongly favor transfer here, except the last, which is

at worst neutral.

31

CONFIDENTIAL MATERIAL OMITTED

*Sources of Proof.* "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer," and therefore the location of the defendant's documentation tends to be the more convenient venue. *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Here, Apple's sources of proof are either in, or more easily accessed from, the Northern District of California, where Apple is headquartered and where the majority of its relevant documents, business records, source code, and the teams that developed the accused technology and know how it works are based. Appx38-39; Appx56-58. The identified potential sources of proof in the possession of third-party chip vendor ▮▮▮▮ Third-party are also likely in the Northern District of California. Appx38-39.

Meanwhile, there appear to be no sources of proof in or more easily accessed from the Western District of Texas. XR, a California company, has no operations in that district. And despite three months of venue discovery, XR has otherwise identified no sources of proof in Texas. XR's opposition on this factor depended largely on leveling baseless attacks against Mr. Rollins's credibility. Appx105-106. This factor thus weighs heavily in favor of transfer. *See, e.g.*, *Juniper*, 14

CONFIDENTIAL MATERIAL OMITTED

F.4th at 1321; *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2011).

*Availability of Compulsory Process.* The availability of compulsory process "weigh[s] heavily in favor of transfer" because there appears to be substantially "more third-party witnesses resid[ing] within the transferee venue than … in the transferor venue." *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *3 (Fed. Cir. Nov. 15, 2021) (quoting *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014)). Apple has identified *sixteen* relevant third-party witnesses who could be compelled to appear in the Northern District of California. Appx41; Appx161. Most importantly, at least six ███████ employees could be subpoenaed in the Northern District of California, but not in Texas. Appx40-41; Appx139; *see* Fed. R. Civ. P. 45(c)(1)(A).

In fact, even co-founder and former CEO of Vivato, Ken Biba—whom XR describes as a "key" individual with knowledge about the technology at issue, Appx16—is located in the Northern District of California. *See* Appx40-41. So too are three California attorneys that prosecuted the patent at issue and two Vivato shareholders that participated in the patent's valuation. Appx42.

By contrast, there appears to be at most one relevant third-party witness who might be subject to compulsory process in the Western District of Texas. *See* Appx42. But the sole presence of one witness in Texas is insufficient to outweigh the number of inventors and third-party witnesses in California. The compulsory-process factor thus weighs strongly in favor of transfer. *See In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *3 (Fed. Cir. Nov. 15, 2021); *see also In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *4 (Fed. Cir. Aug. 2, 2021).

*Witness Convenience.* This factor "is 'probably the single most important factor in [the] transfer analysis.'" *Juniper*, 14 F.4th at 1318 (quoting *Genentech*, 566 F.3d at 1343). And here, that critical factor appears to weigh entirely in favor of transfer. *See, e.g.*, *Juniper*, 14 F.4th at 1319; *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1379 (Fed. Cir. 2021).

Apple provided sworn testimony specifically identifying its technical and likely trial witnesses, including Apple engineers familiar with the accused technology and Apple employees knowledgeable about Apple's financial records, marketing initiatives, and patent licensing. All are in the Northern District of California, and no relevant team

members are in Texas or even have ties to Texas in connection with their work on the accused products.  *See* Appx43-45; Appx55-58.

XR, meanwhile, mainly speculated about two Apple job postings that purportedly seek to fill positions in Texas.  *See* Appx126.  But obviously, possible future hirings do not affect the transfer calculus, and in any event, XR does not provide any evidence showing that these job postings relate to the accused features.  *See* Appx126.

*Other Practical Problems.*  This factor is at worst neutral.  While XR has filed other suits in the Western District of Texas asserting the same patent, they involve different defendants and different categories of products, and therefore "likely to involve significantly different discovery and evidence."  *In re DISH Network L.L.C.*, No. 2021-182, 2021 WL 4911981, at *4 (Fed. Cir. Oct. 21, 2021); *compare, e.g.*, Appx19-20 (accusing smartphones and laptops), *with XR Commc'ns, LLC v. Cisco Sys.*, No. 6:21-cv-00623, Dkt. 1, ¶ 24 (W.D. Tex. June 16, 2021) (accusing "access points and routers").

Furthermore, the Northern District of California has ample experience with the accused technology and the patent family, based on three separate cases XR brought in that district since 2018.  *See XR*

*Commc'ns, LLC v. Ruckus Wireless, Inc.*, No. 21-cv-4679-WHO; *XR*

*Commc'ns, LLC v. ARRIS Sols., Inc.*, No. 18-cv-2736-WHO; *XR*

*Commc'ns, LLC v. Ruckus Wireless, Inc.*, No. 18-cv-01992-WHO.

Further, XR's suits against Google and HP involving similar accused

technology were also recently transferred to the Northern District of

California. *See XR Commc'ns, LLC v. Google LLC*, No. 22-cv-4784-SK;

*XR Comm'cns, LLC v. HP Inc.*, No. 6:21-cv-694-ADA, Dkt. 53 (W.D. Tex.

Aug. 1, 2022). Thus, at worst, the practical problems affecting the

transferor and transferee venues are a wash, making this factor neutral

in the transfer analysis.

### 2. The public-interest factors also favor transfer.

The § 1404(a) public-interest factors include: "(1) the

administrative difficulties flowing from court congestion; (2) the local

interest in having localized interests decided at home; (3) the

familiarity of the forum with the law that will govern the case; and

(4) the avoidance of unnecessary problems of conflict of laws [or in] the

application of foreign law." *Volkswagen II*, 545 F.3d at 315 (alteration

in original). Here, each of the public-interest factors that is not neutral

favors transfer.

*Local Interests.*  Because of its "significant connections" with "the events that gave rise to [the] suit," the Northern District of California has a strong local interest. *Apple*, 979 F.3d at 1344-45; *see also Juniper*, 14 F.4th at 1319-20.  Any evidence of Apple's general presence or contacts in the Western District of Texas, such as Apple retail stores, does not establish a local interest. *See Apple*, 979 F.3d at 1345.  While XR points to the Austin-based third-party that assembles Apple's MacPro desktop computers, there is no plausible reason (let alone any evidence) why anyone at that company would have information that is relevant to this case.  Appx124; *cf. Apple*, 979 F.3d at 1344-45 (presence of Apple's third-party manufacturer in Western District of Texas did not outweigh Northern District of California's strong local interest).  Thus, since XR has no known connections to the Western District of Texas, the local interest factor strongly favors transfer. *Apple*, 979 F.3d at 1345.

*Court Congestion.*  The relative congestion of the two courts—the Western District of Texas and Northern District of California—has at worst a neutral effect on the transfer analysis.  This Court has repeatedly "noted that the Western District of Texas and the Northern

37

District of California show no significant differences in caseload or time-to-trial statistics." *Juniper*, 14 F.4th at 1322; *see also, e.g.*, *Samsung*, 2 F.4th at 1380-81.  XR's opposition ignored this precedent in arguing otherwise.  Appx114.

### B.    The equities heavily favor Apple.

The simple fact that the district court ignored clear precedent and guaranteed months of delay before it will address Apple's transfer motion is enough to warrant mandamus relief.  "[A] court must exercise its discretion within the bounds set by relevant statutes and relevant, binding precedents," and "mandamus is entirely appropriate to review for an abuse of discretion that clearly exceeds the bounds of judicial discretion." *Volkswagen II*, 545 F.3d at 310.  But here, mandamus is especially warranted in view of how the district court's order came about and the effects it will have if permitted to stand.

To start, the district court's sua sponte scheduling order fundamentally undermines § 1404(a)'s purpose: "to 'prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Google*, 2015 WL 5294800, at *1 (quoting *Van Dusen*, 376 U.S. at 616).  Section

1404(a) serves that purpose only when district courts give transfer motions "top priority." *Apple*, 979 F.3d at 1337. Here, if the district court's order stands, the parties will have done almost everything short of preparing for the pretrial conference before the district court rules on the transfer motion. *Supra* 19-21.

Likewise, the district court will have expended considerable resources familiarizing itself with the case to, among other things, resolve disputes over discovery and the asserted claims and prior art. *Id.* But judicial efficiency requires that the "district court should not burden itself with the merits of the action until [the transfer motion] is decided." *McDonnell Douglas*, 429 F.2d at 30. If Apple's motion is ultimately granted—as it should be, *see* Part III.A—another district judge will receive a brand-new case that is well into litigation, in which many issues have been resolved, and in which trial preparation is underway according to another court's rules and preferences. The waste of judicial resources would be particularly acute, given that XR has multiple pending suits in the Northern District of California that involve the same patent family and similar accused technology. *Supra* 35-36. There is no reason to burden a judge with that outcome.

There is particularly no reason to do so when no party has asked for that result. In opposing Apple's motion to supplement, XR did not ask for more time to test the facts contained in the new declarations. It even chose not to take up Apple's offer to make available the supplemental declarants for deposition. *See* Appx174; Appx215. It did so, presumably, because it recognized that these declarations supplied the same information already in XR's possession, which it elected not to test through the venue-discovery process. XR does not seem to be interested in taking any additional steps to ensure "an accurate identification of the witnesses, parties, and evidence relevant to this case," Appx1. Instead, like many other patent plaintiffs before it, XR has asked the district court to resolve transfer by weighing Apple's sworn evidence against XR's unsupported characterizations. *Supra* 10-12, 23. There is no reason to delay the transfer analysis while litigation continues in an inconvenient forum.

Finally, "writs of mandamus are supervisory in nature and are particularly appropriate when the issues also have an importance beyond the immediate case." *Volkswagen II*, 545 F.3d at 319. That is true here. In the span of just a week, the district court issued the same

40

merits-before-transfer scheduling order in at least four separate patent-infringement cases, including this one.  *Supra* 14-15.  This Court should weigh in before the district court adopts that same improper scheduling order as its standard practice.

## CONCLUSION

The Court should issue a writ of mandamus directing the district court to vacate its scheduling order, rule on Apple's pending transfer motion (with or without considering the supplemental evidence), and stay all proceedings on the merits until transfer has been resolved.

Respectfully submitted,

*/s/ Melanie L. Bostwick*

Michael T. Pieja
GOLDMAN ISMAIL TOMASELLI
  BRENNAN & BAUM LLP
200 South Wacker Dr.
22nd Floor
Chicago, IL  60606

Melanie L. Bostwick
Cesar A. Lopez-Morales
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1152 15th Street NW
Washington, DC  20005
(202) 339-8400

Jodie C. Liu
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019

*Counsel for Petitioner*

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the

Clerk of the Court for the United States Court of Appeals for the

Federal Circuit by using the appellate CM/ECF system on September 6,

2022.

A copy of the foregoing was served upon the following counsel of

record and the district court via FedEx:

Reza Mirzaie
Marc A. Fenster
James N. Pickens
Minna Chan
Jason Wietholter
Christian Conkle
Paul A. Kroeger
Philip X. Wang
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Tel: (310) 826-7474
rmirzaie@raklaw.com
mfenster@raklaw.com
jpickens@raklaw.com
mchan@raklaw.com
jwietholter@raklaw.com
cconkle@raklaw.com
pkroeger@raklaw.com
pwang@raklaw.com

Hon. Alan D Albright
United States District Court for the Western District of Texas
800 Franklin Avenue, Room 301,
Waco, Texas 76701
Telephone: (254) 750-1501

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Melanie L. Bostwick*
Melanie L. Bostwick
*Counsel for Petitioner*

# CERTIFICATE OF COMPLIANCE

The petition complies with the type-volume limitation of Fed. R. App. P. 21(d)(1) because this petition contains 7795 words, including 1 word marked as confidential.

This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this petition has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Melanie L. Bostwick*
Melanie L. Bostwick
*Counsel for Petitioner*